IN THE UNITED STATES DISTRICT COURT
IN THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THERESA MWIMBWA<br>1748 Northwood Avenue<br>Lakewood, OH 44107<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>BPL PLASMA, INC.<br>c/o Corporation Service Company<br>3366 Riverside Drive, Suite 103<br>Upper Arlington, OH  43221<br><br>　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.<br><br>JUDGE:<br><br><br><br>**COMPLAINT FOR DAMAGES<br>AND REINSTATEMENT**<br><br>**Jury Demand Endorsed Herein** |

Plaintiff, Theresa Mwimbwa, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

## PARTIES

1. Mwimbwa is a resident of the city of Lakewood, County of Cuyahoga, State of Ohio.

2. BPL Plasma, Inc. ("BPL Plasma") is a Delaware corporation that conducts business in the state of Ohio.

3. BPL Plasma maintains a business at 6813 Broadway Avenue, Suite 10, Cleveland, OH 44105.

## JURISDICTION & VENUE

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Mwimbwa is alleging federal law claims regarding the deprivation of her rights under the Americans with Disabilities Act of 1990 as amended, 42 U.S.C. 126 § 12101 *et seq*., and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.*

5. Some or all of the material events alleged in this Complaint occurred in Cuyahoga County.



6. This Court has supplemental jurisdiction over Mwimbwa's state law claims pursuant to 28 U.S.C. § 1367 as Mwimbwa's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

8. Within 300 days of the conduct alleged below, Mwimbwa filed a dually filed Charge of Discrimination with the EEOC and OCRC.

9. On or about June 21, 2023, the EEOC issued and mailed a Notice of Right to Sue letter to Mwimbwa regarding the Charges of Discrimination brought by Mwimbwa against BPL Plasma.

10. Mwimbwa received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

11. Mwimbwa has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

12. Mwimbwa has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## **FACTS**

13. Mwimbwa is a former employee of BPL Plasma.

14. BPL hired Mwimbwa on or around May 6, 2019.

15. BPL hired Mwimbwa as a Director of Operations.

16. On or about April 25, 2021, Mwimbwa was working at the Broadway location of BPL Plasma when she sustained an on-the-job brain injury after slipping and falling on a wet floor.

17. The fall caused a severe injury to Mwimbwa's head.

18. Mwimbwa was treated at a local hospital where she was diagnosed with a head concussion, an elbow injury, and a hip injury.

19. Mwimbwa took off work a couple of days as a result of her on-the-job injuries.

20. Mwimbwa reported her on-the-job injury to her manager, April Bryant, Regional Director of BPL Plasma.

21. As time passed, Mwimbwa's head injury worsened.

22. The severity of Mwimbwa's head injuries became evident.

23. Mwimbwa began stuttering and her vision became blurry.

24. Mwimbwa also began suffering from cognitive deficiencies in problem solving, comprehension, reading, and memory deficit.

25. Mwimbwa continued working as best she could despite her worsening symptoms.

26. On or about May 7, 2020, Mwimbwa sustained a second head injury at work.

27. A BPL Plasma employee who was pushing a dolly of frozen plasma ran into Mwimbwa.

28. The dolly collided into Mwimbwa.

29. Mwimbwa's head was injured for a second time.

30. Mwimbwa informed BPL Plasma of her second head injury.

31. Around this same time, Mwimbwa began suffering disparate treatment and harassment from other employees at BPL Plasma based on her cognitive disabilities related to her head injuries.

32. In or around May 2021, Mwimbwa made a discrimination complaint to Shannon LeBlanc, Senior Manager of Regional Human Resources.

33. In Mwimbwa's complaint to LeBlanc, she reported a coworker Asia for engaging in discriminatory recruitment of employees to make false complaints against Mwimbwa.

34. Mwimbwa reported to LeBlanc that Asia was referring to her in the workplace and to other employees as "crazy."

35. LeBlanc never followed up with Mwimbwa about her complaints.

36. LeBlanc failed to investigate Mwimbwa's complaints.

37. Upon information and belief, LeBlanc never disciplined Asia for her discriminatory conduct.

38. On or about June 8, 2021, Mwimbwa began feeling unwell.

39. Mwimbwa was walking in BPL Plasma when she suddenly blacked out, fell backwards, slamming her head to the ground.

40. Mwimbwa had now sustained her *third* on-the-job head injury.

41. Due to the exigency of Mwimbwa's condition, a BPL Plasma employee called 911, and an ambulance transported Mwimbwa to the hospital.

42. Mwimbwa was diagnosed with a traumatic brain injury.

43. The traumatic brain injury affected Theresa's cognitive, mental, speech, vision, and her ability to work.

44. Mwimbwa's physician determined that Mwimbwa's blackout was most likely because the concussion she sustained from her first head injury which had not healed.

45. BPL Plasma was aware of Mwimbwa's third head injury and the resulting symptoms.

46. Bryant was visiting the center for inspections and was present during Mwimbwa's blackout emergency.

47. After Mwimbwa's hospital visit, Mwimbwa informed Bryant about her third on-the-job head injury.

48. Mwimbwa told Bryant that her doctor wanted her to be off work for 6 – 8 weeks.

49. Bryant told Mwimbwa she should only take off work a couple of days.

50. Bryant told Mwimbwa that because her two head injuries had occurred in such a short period of time, it was going to cost BPL Plasma "some big money."

51. Mwimbwa, concerned about keeping her job, asked Bryant if she would be fired for her injuries.

52. Bryant replied, "I haven't fired anyone yet today."

53. As of June 2021, Mwimbwa was qualified for FMLA leave.

54. At no point in June 2021 did Bryant nor anyone else at BPL Plasma speak with Mwimbwa about her FMLA rights.

55. While Mwimbwa was off work, Bryant pressured Mwimbwa to return to work sooner than permitted by her doctor.

56. Under pressure from Bryant, Mwimbwa returned to work on June 15, 2021.

57. Upon Mwimbwa's return, Mwimbwa became dizzy and stuttered in her speech.

58. Mwimbwa realized that she could not see clearly and had developed tremors.

59. These symptoms were signs that Mwimbwa was still suffering from the debilitating effects of the concussion she sustained.

60. Mwimbwa notified Bryant that she was having severe difficulties with her cognitive abilities and was leaving work to see her doctor.

61. Mwimbwa had worked for four hours on June 15, 2021 and left early for an emergency doctor's visit.

62. Because of the severity of the effects of her concussion, Jamie Russell, Assistant Manager, drove Mwimbwa to her doctor's office.

63. While in route to see her doctor, Mwimbwa received a call from Shannon LeBlanc, Senior Manager of Regional Human Resources.

64. LeBlanc told Mwimbwa that she was placing Mwimbwa on a conference call with Bryant, LeBlanc, and Jorge, a manager.

65. During the conference call, Bryant began yelling at Mwimbwa because she could not provide coherent and meaningful responses to Bryant's questions.

66. The conference call was actually a disciplinary meeting.

67. Bryant told Mwimbwa that she was issuing Mwimbwa a last chance warning and placing her on a performance improvement plan ("PIP").

68. Bryant told Mwimbwa that she was issuing Mwimbwa a last chance warning and placing her on a PIP while Mwimbwa was on her way to see a doctor about her concussion issues.

69. Bryant told Mwimbwa that her performance fell short of expectation within the last six weeks.

70. The last six weeks included the first, second, and third on-the-job head injuries sustained by Mwimbwa, and the resulting disabilities from those injuries.

71. On or about June 16, 2021, Mwimbwa, on her own, contacted Sedgwick, BPL Plasma's third-party, benefits administrator.

72. Mwimbwa had a serious health condition that required her to be off work.

73. Mwimbwa spoke with Ted Rogers, a Sedgwick representative.

74. During the call, Mwimbwa began uncontrollably stuttering and was so incoherent that Rogers told her to get off the phone and head straight to the hospital emergency room.

75. Mwimbwa called Bryant to tell her that she was headed to the hospital.

76. Bryant expressed anger towards Mwimbwa on the call.

77. Bryant told Mwimbwa that she had "better get back to work" to fix a list of issues with shipments.

78. Rogers advised Mwimbwa not to go to work but to go to the hospital.

79. Mwimbwa was scared because Bryant was angry and she feared for her job.

80. Mwimbwa followed Bryant's instructions and returned to work.

81. LeBlanc called Mwimbwa at work and immediately recognized that Mwimbwa was having a medical issue.

82. While speaking to Mwimbwa, LeBlanc noticed that Mwimbwa was stuttering uncontrollably and incoherent.

83. LeBlanc told Mwimbwa to go and get some help.

84. Mwimbwa, scared she would be terminated, remained at work until 5:00 p.m.

85. After work, Mwimbwa went to see a neurologist.

86. Mwimbwa's neurologist determined that her early return to work was exacerbating the effects of her concussion.

87. Mwimbwa's neurologist told her she should not work until her concussion injuries were resolved.

88. On or about June 17, 2021, Mwimbwa's neurologist sent BPL Plasma a letter explaining the same.

89. Briana Fletcher, Human Resources Manager, contacted Mwimbwa and told her that she would be placed on FMLA from June 17, 2021 through September 7, 2021.

90. In or around the first week of September 2021, Mwimbwa contacted BPL Plasma and requested accommodations in preparation for her return to work.

91. Mwimbwa's doctor permitted her to return to work on a part-time basis with a reduced work schedule of 4 hours per day for 3 days per week.

92. BPL Plasma approved the accommodations through September 26, 2021.

93. BPL Plasma claimed that they could not accommodate Mwimbwa after September 26, 2021 because her part time schedule allegedly placed an undue burden on BPL Plasma:

> This accommodation is approved through **September 26, 2021**. After this date, we will no longer be able to accommodate a part time schedule. As previously explained, not having a full-time CM places a burden on the operation of the center. We need a full-time CM.

94. At no time did BPL explain or show how Mwimbwa working on a part-time schedule would be an undue burden upon the company.

95. BPL Plasma's failed to engage in any other interactive discussions with Mwimbwa regarding alternative accommodations.

96. On or about September 8, 2021, Mwimbwa's physician completed and returned the 4-page form she received from BPL Plasma entitled, "Medical Inquiry in Response to Accommodation Request," which was dated June 9, 2021.

97. In the form, Mwimbwa's physician provided clear details about her condition and prognosis.

98. Mwimbwa's on-the-job brain injury was expected to last through December 2021.

99. Subsequently, BPL Plasma sent Mwimbwa a fitness for duty exam before it would permit Mwimbwa to return to work.

100. BPL Plasma required Mwimbwa's doctor to outline any accommodations Mwimbwa needed prior to her return to work.

101. As a result, Mwimbwa's doctor placed Mwimbwa continuously off work through January 1, 2022.

102. On or about October 1, 2021, BPL Plasma contacted Mwimbwa by letter.

103. BPL Plasma confirmed receipt of Mwimbwa's medical documentation stating that her on-the-job injury required her to be off work through January 1, 2022.

104. In response, BPL Plasma reminded Mwimbwa of the following adverse actions that it was taking against her because of her debilitating on-the-job injury and request:

- Mwimbwa's absences after September 7, 2021 were placed in an unpaid, unprotected leave of absence status.

- BPL was suspending Mwimbwa's access to BPL Plasma's systems while she was in an unpaid, unprotected status.

- BPL Plasma was backfilling Mwimbwa's position because her absence was a hardship to BPL Plasma.

- BPL Plasma refused to guarantee that Mwimbwa's position would be available to her upon her return to work.

- BPL Plasma would consider Mwimbwa for an open, different position or reassignment upon her return.

- Mwimbwa would be required to accept the "new" pay for her "new," different position.

- BPL Plasma required Mwimbwa to make regular insurance premium payments to maintain her health benefits.

105. Thereafter, BPL Plasma terminated Mwimbwa's employment on January 1, 2022.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

106. Mwimbwa restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

107. During her employment, Mwimbwa suffered from impairments including multiple head injuries that resulted in cognitive-related disabilities.

108. As a result of Mwimbwa's conditions, she was disabled.

109. BPL Plasma perceived Mwimbwa as disabled.

110. Mwimbwa's conditions constituted a physical or mental impairment.

111. Mwimbwa's conditions substantially limited one or more of her major life activities, including working.

112. BPL Plasma perceived Mwimbwa's conditions to substantially limit one or more of her major life activities, including working.

113. BPL Plasma treated Mwimbwa differently than other similarly situated employees based on her disabling conditions.

114. In or around January 2022, BPL Plasma terminated Mwimbwa's employment.

115. BPL Plasma took adverse employment actions against Mwimbwa based on her disability.

116. BPL Plasma violated the ADA by taking adverse employment actions against Mwimbwa based on her disability.

117. As a direct and proximate result of BPL Plasma's conduct, Mwimbwa suffered and will continue to suffer damages.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.02**

118. Mwimbwa restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

119. During her employment, Mwimbwa suffered from impairments including multiple head injuries that resulted in cognitive-related disabilities.

120. As a result of Mwimbwa's conditions, she was disabled.

121. BPL Plasma perceived Mwimbwa as disabled.

122. Mwimbwa's conditions constituted a physical or mental impairment.

123. Mwimbwa's conditions substantially limited one or more of her major life activities, including working.

124. BPL Plasma perceived Mwimbwa's conditions to substantially limit one or more of her major life activities, including working.

125. BPL Plasma treated Mwimbwa differently than other similarly situated employees based on her disabling conditions.

126. In or around January 2022, BPL Plasma terminated Mwimbwa's employment.

127. BPL Plasma took adverse employment actions against Mwimbwa based on her disability.

128. BPL Plasma violated R.C. § 4112.02 by taking adverse employment actions against Mwimbwa based on her disability.

129. As a direct and proximate result of BPL Plasma's conduct, Mwimbwa suffered and will continue to suffer damages.

## COUNT III: FAILURE TO ACCOMMODATE UNDER THE ADA

130. Mwimbwa restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

131. Mwimbwa informed BPL Plasma of her disabilities.

132. Mwimbwa requested accommodations from BPL Plasma to assist with her disabilities including light duty, limited duty, limited hours, medical leave and other related accommodations.

133. Mwimbwa's requested accommodations were reasonable.

134. There were accommodations available that would have been effective and would have not posed an undue hardship to BPL Plasma.

135. BPL Plasma failed to engage in the interactive process of determining whether Mwimbwa needed an accommodation.

136. BPL Plasma failed to provide an accommodation.

137. BPL Plasma violated the ADA.

138. As a direct and proximate result of BPL Plasma' conduct, Mwimbwa suffered and will continue to suffer damages.

## COUNT IV: FAILURE TO ACCOMMODATE UNDER R.C. § 4112.02

139. Mwimbwa restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

140. Mwimbwa informed BPL Plasma of her disabilities.

141. Mwimbwa requested accommodations from BPL Plasma to assist with her disabilities including light duty, limited duty, limited hours, medical leave and other related accommodations.

142. Mwimbwa's requested accommodations were reasonable.

143. There were accommodations available that would have been effective and would have not posed an undue hardship to BPL Plasma.

144. BPL Plasma failed to engage in the interactive process of determining whether Mwimbwa needed an accommodation.

145. BPL Plasma failed to provide an accommodation.

146. BPL Plasma violated R.C. § 4112.02.

147. As a direct and proximate result of BPL Plasma' conduct, Mwimbwa suffered and will continue to suffer damages.

## COUNT V: RETALIATION IN VIOLATION OF THE ADA 42 U.S.C. § 12203

148. Mwimbwa restates each and every prior paragraph of this complaint, as if it were fully restated herein.

149. As a result of the discriminatory conduct described above, Mwimbwa complained to BPL Plasma about the disability discrimination that she was experiencing.

150. Subsequent to Mwimbwa reporting discrimination, she suffered adverse actions.

151. Adverse actions against Mwimbwa included, but are not limited to, being forced to work under the threat of adverse action, denial of accommodation, denial of information or assistance related to medical leave, and termination.

152. BPL Plasma's actions were retaliatory in nature based on Mwimbwa's opposition to the unlawful discriminatory conduct.

153. Mwimbwa suffered emotional distress as a result of BPL Plasma's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 12203.

154. As a direct and proximate result of BPL Plasma's retaliatory discrimination against and termination of Mwimbwa, she suffered and will continue to suffer damages, including economic damages and emotional distress.

### COUNT VI: RETALIATION IN VIOLATION OF R.C. § 4112.02(I)

155. Mwimbwa restates each and every prior paragraph of this complaint, as if it were fully restated herein.

156. As a result of the discriminatory conduct described above, Mwimbwa complained to BPL Plasma about the disability discrimination that she was experiencing.

157. Subsequent to Mwimbwa reporting discrimination, she suffered adverse actions.

158. Adverse actions against Mwimbwa included, but are not limited to, being forced to work under the threat of adverse action, denial of accommodation, denial of information or assistance related to medical leave, and termination.

159. BPL Plasma's actions were retaliatory in nature based on Mwimbwa's opposition to the unlawful discriminatory conduct.

160. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

161. Mwimbwa suffered emotional distress as a result of BPL Plasma's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

162. As a direct and proximate result of BPL Plasma's retaliatory discrimination against and termination of Mwimbwa, she suffered and will continue to suffer damages, including economic damages and emotional distress.

## COUNT VII: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

163. Mwimbwa restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

164. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

165. Defendant is a covered employer under the FMLA.

166. During her employment, Mwimbwa qualified for FMLA.

167. During her employment, Mwimbwa attempted to request FMLA leave.

168. Defendant failed to properly advise Mwimbwa of her rights under the FMLA.

169. Defendant failed to properly advise Mwimbwa of her eligibility under the FMLA.

170. When Mwimbwa did get approved for FMLA, Defendant improperly informed her that her job would not be protected.

171. Defendant told Mwimbwa she may have to return to a new job position after returning from FMLA.

172. Defendant told Mwimbwa that her compensation and other terms of her employment may change after returning from FMLA.

173. Defendant violated Mwimbwa's job restoration rights under the FMLA.

174. As a direct and proximate result of Defendant's conduct, Mwimbwa is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorney's fees.

## COUNT VIII: RETALIATION IN VIOLATION OF THE FMLA

175. Mwimbwa restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

176. During her employment, Mwimbwa attempted to utilize FMLA leave.

177. After Mwimbwa attempted to use her qualified FMLA leave, Defendant retaliated against her.

178. Defendant retaliated against Mwimbwa by terminating her employment.

179. Defendant retaliated against Mwimbwa by not returning her to work after her leave.

180. Defendant willfully retaliated against Mwimbwa in violation of 29 U.S.C. § 2615(a).

181. As a direct and proximate result of Defendant's wrongful conduct, Mwimbwa is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## DEMAND FOR RELIEF

WHEREFORE, Mwimbwa respectfully requests this Court grant the following:

(a) An order requiring BPL Plasma to restore Mwimbwa to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against BPL Plasma of compensatory and monetary damages to compensate Mwimbwa for lost wages, front pay, emotional distress, liquidated damages and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of reasonable attorneys' fees and non-taxable costs for Mwimbwa's claims as allowable under law;

(d) An award of the taxable costs of this action; and

(e) An award of such other relief as this Court may deem necessary and proper.

          Respectfully submitted,

          */s/ Fred M. Bean*
          Fred M. Bean (0086756)
          **SPITZ, THE EMPLOYEE'S LAW FIRM**
          25825 Science Park Drive, Suite 200
          Beachwood, OH 44122
          Phone: (216) 291-4744
          Fax:    (216) 291-5744
          Email: Fred. Bean@spitzlawfirm.com

          *Attorney For Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by jury by the maximum number of jurors permitted.

          */s/ Fred M. Bean*
          Fred M. Bean (0086756)
          **SPITZ, THE EMPLOYEE'S LAW FIRM**